ELLIS, Judge:
These three consolidated concursus proceedings present a contest as to the proceeds of three group life insurance policies on the life of Walter Nelson Williams, each of which named Verna Coleman as beneficiary. Contestants are the heirs of Mr. Williams and the Succession of Miss Coleman. After trial on the merits, one judgment was signed in the three cases, awarding the proceeds of the policies to the Williams heirs, and the Administratrix of the Succession of Verna Coleman has appealed.
The record reveals that the bodies of Mr. Williams and Miss Coleman were found in their apartment, several days after their deaths. Both had been shot and killed by a .25 caliber automatic, which was the property of Miss Coleman.
Mr. Williams had been shot in the left temple, and killed instantly. Powder burns on his head indicated that the gun had been held against his temple when it was fired. After his death, his boots and trousers had been removed and were at some distance from his body. Miss Coleman died from a single shot to her left breast, which passed through her body and probably produced death within one or two minutes. It was clear from the evidence that she was shot after Mr. Williams had been shot and died after he died.
Expert witnesses concluded from the evidence that Miss Coleman had killed Mr. Williams, and had later committed suicide. The investigation did not reveal any evidence that a third party or parties were present in the apartment, nor were any property or valuables missing.
Other evidence indicated that both decedents were right-handed. Invitations for their forthcoming wedding had been printed, addressed and stamped, but not mailed. One witness testified that Mr. Williams had said that he was not ready to get married and that he was going to tell Miss Coleman that the wedding was off. The witness also stated on cross examination, that Mr. Williams might have been joking, but that he seemed serious.
The investigating detective, who qualified as an expert in homicide and suicide investigations, testified that he did not believe the killing of Mr. Williams to have been accidental because of the fact that the gun was pressed to his head when it was fired. He did not believe that Mr. Williams *424 shot himself because he was right-handed and was shot in the left temple. The forensic medicine expert agreed that Miss Coleman had shot Mr. Williams and then committed suicide, but declined to speculate further.
The trial judge, in his oral reasons, concluded as follows:
“But after considering all of the facts, the court concludes that Verna Coleman did, in fact, kill Nelson Williams, and thereafter took her own life. The preponderance of the evidence, which is the burden of proof in this case, shows that. The court further feels that the evidence shows that Verna Coleman killed Walter Williams in one of three ways, either by murder, which would be intentional killing; by manslaughter, by an act of provocation; or by negligent homicide. All three of these theories would come under a felonious or intentional killing. And therefore, the court holds that Verna Coleman’s estate cannot be a beneficiary of these policies.”
In this court, the Administratrix of Miss Coleman’s succession argues that the trial judge erred in holding that an unintentional killing was sufficient, as a matter of law, to disqualify Miss Coleman as beneficiary; and that the evidence was not sufficient to support a finding that Miss Coleman intentionally and unjustifiably killed Mr. Williams.
The deaths occurred in March, 1979, prior to the enactment of Act 246 of 1979, R.S. 22:613(D). Therefore, the law applicable in this situation is as expressed in American Nat. Life Ins. Co. v. Shaddinger, 205 La. 11, 16 So.2d 889 (1944) as follows:
“... The heirs of the insured invoke the law which 'is recognized by all of the courts, as a matter of public policy, that a beneficiary named in a life insurance policy is not entitled to the proceeds of the insurance if he or she feloniously kills the insured.

“The converse of the proposition is that the intentional killing by the beneficiary of the person insured, if committed in lawful self-defense, will not prevent the beneficiary from claiming the proceeds of the insurance on his life.”
The word “felonious” is defined in Black’s Law Dictionary as follows:
“A technical word of law which means done with intent to commit crime, i.e. criminal intent.”
“Feloniously” is defined in Black’s Law Dictionary as follows:
“Of, pertaining to, or having, the quality of felony. Proceeding from an evil heart or purpose; done with a deliberate intention of committing a crime.”
We therefore find that a beneficiary is not deprived of the proceeds of a life insurance policy if he accidentally or unintentionally kills the insured.
However, we think the preponderance of the evidence is that the killing of Mr. Williams was done by Verna Coleman, and that it was neither accidental nor unintentional. We agree with the opinion of the investigating officer that the fact that the gun had been pressed to Mr. Williams’s temple when it was fired is not consistent with a finding that Miss Coleman accidentally fired the fatal shot. We therefore feel that Miss Coleman intentionally and feloni-ously killed Mr. Williams, without legal justification, and is thereby precluded from being a beneficiary under the policies in question in these three cases.
The judgment appealed from is therefore affirmed. Costs of this appeal shall be paid by appellant.
AFFIRMED.