873 So.2d 44 (2004)
JACKSON NATIONAL LIFE INSURANCE COMPANY
v.
Julie Esther KENNEDY-FAGAN, Individually and as Executrix of the Succession of Sylvia Antonia Acosta Kennedy-Graves; and Christy Graves, Emory L. Graves, Jr. and Ann Graves, Individually and as Representatives of the Succession of Emory Lea Graves, Sr.
No. 2003 CA 0054.
Court of Appeal of Louisiana, First Circuit.
February 6, 2004.
Writ Denied April 23, 2004.
*46 Gregory J. Walsh, New Orleans, Counsel for Plaintiff/Appellee Jackson National Life Ins. Co.
J. Jackson Stamps, T. Lynn Witt-Stamps, Thomas E. Schafe, III, Slidell, Counsel for Defendant/Appellant Julie Esther Kennedy-Fagan.
Raymond C. Burkart, Jr., Mandeville, Counsel for Defendants/Appellees Christy Graves and Ann Graves, Individually and as Executrixes of the Succession of Emory L. Graves, Sr., and Emory L. Graves, Jr.
Before: FOIL, KUHN, PETTIGREW, FITZSIMMONS, and GAIDRY, JJ.
GAIDRY, J.
This controversy arises from the tragic murder-suicide of an elderly couple, alleged to have resulted from a suicide pact. It presents a res nova issue for our determination: May the succession or heirs of the insured under a life insurance policy succeed to the rights of a partial beneficiary under the policy terms, if the partial beneficiary was intentionally killed by the insured? We answer this question no, but based upon the policy language, not for the reasons advanced by the appellant. The surviving primary partial beneficiaries succeed to the interest of the primary partial beneficiary predeceasing the insured.

FACTS AND PROCEDURAL HISTORY
The plaintiff, Jackson National Life Insurance Company (Jackson National), issued a policy of term life insurance to Emory L. Graves, Sr. (Mr. Graves), as the insured and owner. The policy was issued on July 23, 1987, with a face amount of $100,000.00. Mr. Graves designated four beneficiaries with equal percentage interests: Sylvia Kennedy Graves (Ms. Graves), his wife; and his three children of an earlier marriage, Christy Graves, M.D., Emory L. Graves, Jr., and Ann Graves (the Graves siblings). Ms. Graves had two children from an earlier marriage.
At the time of the tragic events precipitating this action, Mr. and Ms. Graves had been married for over thirty years. Both were in declining health and suffering from depression. Additionally, Ms. Graves was bedridden as the result of a series of strokes, and had recently become combative toward Mr. Graves and a caretaker.
*47 On July 27, 2001, one of the caretakers attending Mr. and Ms. Graves observed unusual behavior by Mr. Graves upon her departure from their residence. She promptly contacted Mr. Graves's daughter, Dr. Graves, and reported that behavior. Dr. Graves went to the residence and discovered Mr. and Mrs. Graves in a rear bedroom. Both had gunshot wounds to their heads. Ms. Graves was deceased at that time, and Mr. Graves died shortly after Dr. Graves discovered them.
The successions of Mr. and Ms. Graves were instituted in separate proceedings. Ms. Kennedy-Fagan was appointed executor of her mother's estate, and made demand of Jackson National for the policy proceeds on behalf of her mother's estate. Dr. Graves and her sister were appointed joint executors of their father's succession, and also made claims for the policy proceeds individually and on behalf of the succession.[1]
Based upon the opposing claims of the decedents' children, Jackson National invoked the present concursus action, and deposited the policy proceeds and accrued interest in the registry of the trial court. Ms. Kennedy-Fagan and two of the Graves siblings, Dr. Graves and her sister, answered the petition.[2] The latter defendants also filed a reconventional demand against Jackson National, seeking statutory penalties and attorney's fees.
Dr. Graves and her sister moved for partial summary judgment in favor of the
Graves siblings and the succession of Mr. Graves. The trial court heard the motion on September 6, 2002, and granted the motion, awarding each of the Graves siblings 25 percent of the total proceeds and accrued interest, and awarding the remaining 25 percent to Dr. Graves and her sister as executors of their father's succession. The trial court's judgment was signed on September 11, 2002. From that judgment, Ms. Kennedy-Fagan has instituted this appeal.

JURISDICTION
Appellate courts have the duty to examine subject matter jurisdiction sua sponte, even when the parties do not raise the issue. McGehee v. City/Parish of East Baton Rouge, 00-1058, p. 3 (La.App. 1st Cir.9/12/01), 809 So.2d 258, 260. A judgment that determines the merits in whole or in part is a final judgment. La. C.C.P. art. 1841. Whether a partial final judgment is immediately appealable, however, must be determined by examining the requirements of La. C.C.P. art.1915.
Our review of the judgment at issue indicates that it resolves all of the issues involved in the principal or original demand, being those issues that determine which of the two competing groups of claimants in a concursus action is entitled to the funds admittedly due and deposited in the registry of the court. La. C.C.P. arts. 4651, 4658.[3] The judgment does not *48 determine all claims between all parties, as the statutory penalties claim asserted by the Graves siblings in their reconventional demand remains unresolved. Nevertheless, the judgment at issue clearly meets the requirements of La. C.C.P. art. 1915(A)(3).[4] Thus, the trial court was not required to "certify" its judgment as appealable under La. C.C.P. art. 1915(B), and we clearly have jurisdiction to determine this appeal. Motorola, Inc. v. Associated Indemnity Corporation, 02-0716, p. 7 (La. App. 1st Cir.4/30/03), 867 So.2d 715, 719.

STANDARD OF REVIEW
The judgment from which this appeal is taken is a partial summary judgment. Accordingly, our review must be a de novo review based upon the evidence presented in the trial court, using the same criteria used by the trial court in deciding whether summary judgment is appropriate. Simmons v. Berry, 98-0660, p. 4 (La.App. 1st Cir.12/20/00), 779 So.2d 910, 913-14. We are authorized and, indeed, required to render a judgment "which is just, legal, and proper upon the record on appeal." La. C.C.P. art. 2164.

THE MERITS
The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The mover has the burden of proof that he is entitled to summary judgment. If the mover would also bear the burden of proof at trial on the matter at issue, he must negate all essential elements of the adverse party's claim, action, or defense. See La. C.C.P. art. 966(C)(2). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2); Simmons, 98-0660 at p. 4, 779 So.2d at 914. In determining a motion for summary judgment, the supporting documents submitted by the parties should be scrutinized equally. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 5 (La.App. 1st Cir.12/29/97), 706 So.2d 525, 528.
Interpretation of an insurance contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment. Madden v. Bourgeois, 95-2354, p. 3 (La.App. 1st Cir.6/28/96), 676 So.2d 790, 792. An insurance policy is a contract between the parties, and should be construed employing the general rules of interpretation of *49 contracts. Blackburn v. National Union Fire Ins. Co. of Pittsburgh, 00-2668, pp. 5-6 (La.4/3/01), 784 So.2d 637, 641. Words in an insurance policy must therefore be given their generally prevailing meaning, unless they have acquired a technical meaning, in which case the technical meaning applies. La. C.C. art.2047; Succession of Fannaly v. Lafayette Ins. Co., 01-1355, p. 3 (La.1/15/02), 805 So.2d 1134, 1137. An insurance policy is construed as a whole, and each provision in the policy must be interpreted in light of the other provisions. Id., 01-1355 at pp. 3-4, 805 So.2d at 1137.
The policy at issue provided the following:
DEATH OF BENEFICIARY The interest of any Beneficiary who dies before the Insured will end at the death of the Beneficiary. The interest of any Beneficiary who dies at the time of or within ten days after the death of the Insured will also end if no proceeds have been paid to that Beneficiary. If the interest of all designated Beneficiaries has ended, any proceeds will be payable to the estate or legal successors of the Insured. (Our emphasis.)
The right of the parties to the insurance contract to provide for the disposition of proceeds in the event any beneficiary predeceases the insured, regardless of the law of successions or creditors' claims, is expressly recognized in La. R.S. 22:647(D). Under our law, absent a conventional agreement, no one has the vested right to the status of a beneficiary under a life insurance contract, if the contingent event which vests such right, the death of the insured, has not occurred. Until then, the parties to the insurance contract are free to change the beneficiary, if such a change is permitted by its terms.
An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Magnon v. Collins, 98-2822, p. 7 (La.7/7/99), 739 So.2d 191, 196. The policy at issue unambiguously provided that the interest of any beneficiary predeceasing the insured ended with the beneficiary's death. On the record before us, there is no genuine issue of material fact suggesting that Ms. Graves did not predecease Mr. Graves.[5] Thus, her interest as beneficiary ended prior to his death. The question then arises as to the disposition of her prior interest in 25 percent of the proceeds. The trial court concluded that the inchoate interest was payable to Mr. Graves's estate or succession under the foregoing terms. We disagree. The policy plainly states that its proceeds are payable to the insured's estate if the interest ofall beneficiaries has ended. There are still three named beneficiaries. Ms. Graves's interest as a beneficiary was not a heritable right, and she acquired no right to any proceeds of the policy prior to her death. Thus, it cannot be concluded that her interest devolves upon her estate, succession or heirs.
The only logical conclusion to be drawn is that the three remaining beneficiaries are entitled to the policy proceeds in the respective proportions to which their assigned interests bear to the total of the remaining interests. This result accords with the intent of La. R.S. 22:647(A) that all lawful beneficiaries are entitled to "the proceeds and avails of the *50 policy" and the insured's intent, as expressed in the policy. The policy provides that the application is "made a part of the policy," and that the insuring agreement and application together "constitute the entire contract between the parties." In the application, the insured had the option of designating the named beneficiaries as either "primary" or "contingent" beneficiaries, in addition to assigning the percentages of their respective interests. All four beneficiaries were designated by Mr. Graves as primary beneficiaries. No contingent or substitute beneficiary was named. One obvious purpose of the provision providing for the policy proceeds to be payable to the insured's estate upon the death of all beneficiaries was to provide for the situation where the primary beneficiary predeceased the insured and no contingent beneficiary was named. In such event, the estate becomes the "default" beneficiary. See also La. R.S. 22:645. As there are surviving primary beneficiaries here, they are clearly entitled to all proceeds in preference to the "default" beneficiary.[6]
Ms. Kennedy-Fagan's primary argument before the trial court and this court is founded in the alleged intentional nature of Mr. Graves's killing of his wife. She forcefully contends that public policy prohibits the heirs of Mr. Graves, the Graves siblings, from "benefiting" from her mother's killing, by succeeding to her interest as beneficiary. In support of her argument, Ms. Kennedy-Fagan cites La.
R.S. 22:613(D) and a plethora of Louisiana and foreign cases upholding the well-recognized principle that a beneficiary of a life insurance policy is not entitled to its proceeds if he or she intentionally or feloniously kills the insured. This principle was codified in our law by La. R.S. 22:613(D) in 1979, but was recognized as law founded upon public policy prior to that time. See, e.g., Pan American Life Insurance Company v. Hancock, 415 So.2d 422, 424 (La. App. 1st Cir.1982), writ denied, 420 So.2d 444 (La.1982), involving a murder-suicide committed by a beneficiary.[7]
We cannot accept the proposition advanced by Ms. Kennedy-Fagan. Mr. Graves was the insured, not a beneficiary. We fail to comprehend how he could be said to "benefit" from his wife's death as to the policy proceeds. Natural personality ends at death. La. C.C. art. 24. It does not continue in the form of an "estate" or succession. La. C.C. art. 871, Revision Comment1981; La. C.C. art. 872, Revision Comment1981. The actual result to which Ms. Kennedy-Fagan raises objection is the supposed "benefit" bestowed upon the Graves siblings, as Mr. Graves's heirs, by the intentional killing of the fourth primary beneficiary, not the insured. Louisiana Revised Statutes 22:613(D) simply does not address this situation; it is therefore governed by the policy terms, which constitute the law between the parties. Here, the Graves siblings are innocent of any wrongful act upon which the public policy considerations *51 urged by Ms. Kennedy-Fagan are predicated. There is no general concept of hereditary guilt in our law that would operate to deprive them as remaining primary beneficiaries of their rights under the policy. The rights of the Graves siblings to the policy proceeds do not devolve upon them in their status as their father's heirs by succession, but by virtue of the policy terms.
In summary, the issue of whether Mr. Graves can be found legally responsible for his wife's death, so as to impose an obligation upon his heirs, is not properly before us, and is irrelevant to our determination of the issues presented in this case.
Ms. Kennedy-Fagan seeks to buttress her argument by characterizing the policy at issue as community property, and urging that a genuine issue of material fact exists as to whether Ms. Graves, as half-owner of the policy, consented to the designation of the named beneficiaries. This argument has no merit. While this term life insurance policy may very well have been community property, our law has consistently recognized a clear distinction between ownership of a policy (and its "lifetime" benefits during the insured's life) and ownership of its death benefits or proceeds. Berry v. Metropolitan Life Insurance Company, 327 So.2d 521, 523-24 (La.App. 1st Cir.), writ denied, 329 So.2d 760 (La.1976). The death benefits of a life insurance policy not payable to the insured's estate are not community assets, and thus their ownership is governed by the policy's terms. Fowler v. Fowler, 03-0590 pp. 7-8 (La.12/12/03), 861 So.2d 181; Standard Life Ins. Co. of the South v. Franks, 278 So.2d 112, 114 (La.1973). A legitimate issue may ultimately arise as to whether Ms. Graves's succession has any claim against Mr. Graves's succession for premiums paid with community funds. But that issue is not before us now, and we can state that neither Ms. Graves's succession nor her heirs have any claim in that respect against the policy proceeds. La. R.S. 22:647(A).

DAMAGES FOR FRIVOLOUS APPEAL
The Graves siblings, by brief, urge that Ms. Kennedy-Fagan's appeal is frivolous, given the law applicable to the merits, entitling them to damages and reasonable attorney's fees incurred in opposing the appeal. The recovery of damages for frivolous appeal is authorized by La. C.C.P. art. 2164 and Rule 2-19 of the Uniform Rules of Louisiana Courts of Appeal. But La. C.C.P. art 2133 specifically states that an appellee "must file an answer to the appeal" if "he demands damages against the appellant." Although an answer to an appeal is the ordinary vehicle for asserting a claim for frivolous appeal damages, the jurisprudence has also recognized an independent appeal as an alternate vehicle. See Schulingkamp v. Schulingkamp, 96-2680, p. 4 (La.App. 1st Cir.12/29/97), 706 So.2d 1005, 1007, writ denied, 98-0279 (La.3/20/98), 715 So.2d 1219. The Graves siblings did not file an independent appeal or answer Ms. Kennedy-Fagan's appeal to assert their claim to such damages. Thus, their claims for damages and attorney's fees for frivolous appeal are not properly before this court and are accordingly denied.

DECREE
The judgment of the trial court in favor of Christy Graves and Ann Graves, in their representative capacities as co-executors of the succession of Emory L. Graves, Sr., is reversed. The judgment of the trial court in favor of the defendants in concursus, Christy Graves, Emory L. Graves, Jr., and Ann Graves, individually is affirmed, but amended to award each one-third (1/3) of *52 the policy proceeds, or $33,333.33, with proportionate accrued interest, after deduction of court costs. All costs of this appeal are assessed to the defendant-appellant, Julie Kennedy-Fagan.
AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.
FITZSIMMONS, J, concurs in part, dissents in part, and assigns reasons.
FITZSIMMONS, Judge, concurring in part, with reasons, and dissenting in part, with reasons.
I respectfully dissent from the decision reached by the majority to allocate the contested 25% portion of the proceeds of Mr. Graves' insurance policy to the remaining three insurance beneficiaries. Additionally, I concur in the result reached in the majority's discussion of subject matter jurisdiction; however, I would respectfully like to comment on the analysis with additional reasons.
At the time of Mr. Graves' death, one designated beneficiary, Mrs. Graves, had predeceased him. Thus the issue: to whom, or what, does her share flow? The insurance policy application allowed the insured to designate both "primary" and "contingent" multiple beneficiaries, and to assign whatever percentage interests he wished. Mr. Graves assigned each of the four primary beneficiaries "25%"; however, he did not designate any contingent beneficiaries. Moreover, the policy did not indicate that multiple beneficiaries were to have equal interests.
As written, the policy calls for only one contingency, which rests solely on the situation that when the interest of "all" beneficiaries has ended, the proceeds would be payable to the estate or legal successors of the insured. Since all of the beneficiaries were not deceased, the majority argues that Mrs. Graves' 25% must flow to the three remaining beneficiaries. However, I would respectfully dissent on the grounds that such an inference stretches the interpretation of the insurance contract beyond its parameters. The terms of the policy do not address what happens when one, two or even three beneficiaries have predeceased the insured. Moreover, the insured had the ability to provide for a contingent disposition should a beneficiary pre-decease him. He elected not to so provide. As a result, the policy is clear that the living beneficiaries receive their set portions according to the terms of the contract. Mrs. Graves' inchoate portion does not de facto devolve to the three surviving beneficiaries, but rather to the estate of their father because no contingent beneficiary is contractually designated. From here on out, the will of the decedent would determine the distribution in the absence of a contractual provision. It is for these reasons that I would affirm the trial court.
Turning briefly to the issue of subject matter jurisdiction, it would seem that the provisions of La. C.C.P. art. 1915A(1) would apply, rather than exclusively relying on La. C.C.P. art. 1915A(3) to determine that certification by the trial court was not necessary. The partial judgment resolves all claims involving one of the parties, i.e., Jackson National Life Insurance Company. Thus, I concur in this court's ultimate conclusion on the issue of this court's jurisdiction.
NOTES
[1] A wrongful death action has also evidently been filed by Ms. Kennedy-Fagan against the Graves siblings, as the heirs of Mr. Graves, through his succession.
[2] Emory L. Graves, Jr. never filed an answer to Jackson National's petition for concursus. However, this does not preclude his recovery of any sum determined to be due him, as he occupies the status of both plaintiff and defendant, and issue need not be joined by default if a defendant fails to answer. La. C.C.P. art. 4656. Additionally, no other party moved to limit the time for him to file an answer under La. C.C.P. art. 4657, so the preclusive effect of an order issued in response to such a motion does not come into play here.
[3] As the original demand is a concursus action, there is not even a residual issue as to the award of court costs; under the law, they are required to be deducted from the funds on deposit, unless the court in its discretion awards the successful claimant the costs so deducted against the unsuccessful claimants. La. C.C.P. art. 4659. The judgment here is silent as to costs, so it must be presumed that the trial court declined to exercise its discretion in that regard.
[4] The judgment at issue does not actually dismiss any party from the principal demand, so it technically does not meet the criterion of dismissal required under La. C.C.P. art. 1915(A)(1). Nevertheless, for all practical purposes, it resolves all issues as to the sum in dispute as between the debtor and the two competing groups of claimants, and the debtor is clearly entitled to its discharge or dismissal of the principal demand. La. C.C.P. arts. 4658, 4662. Thus, it is not an "issue" summary judgment under La. C.C.P. art. 966(E), and meets the criterion of La. C.C.P. art. 1915(A)(3).
[5] The movers put forth evidence that Ms. Graves died instantaneously from the gunshot wound to her head, that she was already deceased when her body was discovered, that her husband inflicted her fatal wound, and that he died after their bodies were discovered. This evidence was essentially unrebutted by Ms. Kennedy-Fagan.
[6] See 4 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3rd § 61:39-40 (2003). The result we reach here as to the disposition of Ms. Graves's interest as beneficiary was not urged by any party to this appeal. Nevertheless, it is the correct and proper result under the law. The purpose of La. C.C.P. art. 2164 is to give an appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was made, argued, or passed on by the court below. Rachal v. Rachal, 35,074, p. 8 (La.App. 2nd Cir.10/12/01), 795 So.2d 1286, 1291.
[7] A corollary legal principle, founded upon the same public policy, is the disqualification of an heir who is judicially determined to have participated in the intentional killing or attempted killing of the decedent. La. C.C. art. 941.