IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 16, 2008

Charles R. Fulbruge III
Clerk

No. 08-30409
Summary Calendar

FIRST COLONY LIFE INSURANCE COMPANY

Plaintiff - Appellee

v.

ALFRED J KREPPEIN, JR

Defendant - Appellant

v.

RYAN BRICE CRANE; LAUREL CRANE LUQUETTE

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:05-CV-6849

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Alfred Kreppein, Jr. appeals the district court's judgment against him in an interpleader action filed to determine who was the lawful beneficiary (or

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

beneficiaries) under a life insurance policy issued in the name of Stephanie Kreppein. For the reasons provided below, we affirm.

## I. BACKGROUND

Stephanie Kreppein and Alfred Kreppein, Jr. were married in November 2000. According to Mr. Kreppein, he and his wife were accumulating large amounts of debt on real estate investments and, therefore, decided to purchase life insurance policies to protect each other in the event of the death of one of them. In or around November 2002, Mr. Kreppein contacted Terry Sullivan—a friend of the Kreppeins and an insurance broker—who then assisted the Kreppeins in purchasing separate life insurance policies from First Colony Life Insurance Company ("First Colony"). Mrs. Kreppein's insurance policy, issued on February 3, 2003, was a term life insurance policy for $500,000. Mr. Kreppein was named the primary beneficiary and Mrs. Kreppein's children from another marriage—Ryan Brice Crane and Laurel Crane Luquette—were named contingent beneficiaries.

In May 2005, Mrs. Kreppein was diagnosed with terminal brain cancer. On July 28, 2005, Mrs. Kreppein moved from her marital home in New Orleans, Louisiana to Baton Rouge in order to live with her mother.[1] On July 29, 2005, a withdrawal of approximately $140,000 was made from the Kreppeins' joint bank account in a Baton Rouge branch office. On or about that same day, Mr. Kreppein was advised by Sullivan that an attorney purporting to represent Mrs. Kreppein requested that the named beneficiary of Mrs. Kreppein's life insurance policy be changed.

Although Mr. Kreppein felt that Mrs. Kreppein was mentally incompetent and was not acting of her own accord, in order to protect his property, Mr. Kreppein filed a petition for divorce in the Civil District Court for the Parish of

---

[1] Mr. Kreppein claimed that Mrs. Kreppein was in fact "kidnapped" by Crane's wife and Luquette.

Orleans, State of Louisiana, on August 2, 2005. As part of the pleadings, Mr. Kreppein included a proposed temporary restraining order, which was signed and executed by the state court that same day. The temporary restraining order prohibited Mrs. Kreppein from "alienating, encumbering, or disposing of any or all of the assets of the community . . . or from changing the ownership and/or beneficiaries of any policies of life insurance . . . ." A show-cause hearing was set in the order for August 16, 2005, to determine whether a preliminary injunction should be issued. The order was served on Mrs. Kreppein on August 12, 2005. And, shortly thereafter, Mrs. Kreppein filed her own petition for divorce with the same court.

The August 16 show-cause date passed without a hearing; a preliminary injunction never issued; a request for an extension of the temporary restraining order was never made; and the hearing was never rescheduled. The reason for inaction is in dispute. However, the undisputed record evidence at least shows that: (1) on or about August 13, 2005, the Kreppeins' respective attorneys agreed to consolidate their cross-petitions for divorce into a single action and to continue the August 16 hearing; (2) on August 17, 2005, Mrs. Kreppein's attorney both faxed and mailed Mr. Kreppein's attorney a proposed motion for consolidation and a continuance; and (3) the proposed motion was never filed with the state court. Mr. Kreppein also offered evidence that his attorney did not receive the mailed copy of the proposed motion until Friday, August 27, 2005, which was the last normal court day for a number of weeks because Hurricane Katrina struck the New Orleans area on August 29, 2005.

Meanwhile, on August 22, 2005, Mrs. Kreppein executed a "Policy Change Form," which purported to revoke all prior beneficiary designations and designate her children, Crane and Luquette, as the primary beneficiaries of her life insurance policy. First Colony acknowledged receipt on August 30, 2005. On

October 11, 2005—without any further action ever having been taken with respect to the temporary restraining order—Mrs. Kreppein died.

Following her death, First Colony received notices of proof of loss and claims for insurance proceeds from both Crane and Luquette and Mr. Kreppein. On December 27, 2005, therefore, it filed an interpleader action in federal district court against Mr. Kreppein, Crane, and Luquette pursuant to Rule 22 of the Federal Rules of Civil Procedure to determine who was the rightful beneficiary (or beneficiaries) under Mrs. Kreppein's life insurance policy. First Colony alleged that it was "a mere stakeholder" with "no beneficial interest in the death benefits" and that it could not "make payment of the death benefits without incurring the risk of" multiple adverse judgments.

Upon order of the district court, on January 17, 2006, First Colony deposited the insurance proceeds into the court's registry. On January 23, 2006, Crane and Luquette filed their joint answer and counterclaims, and on January 30, 2006, Mr. Kreppein filed his answer and counterclaims. Thereafter, First Colony moved for summary judgment, which was granted in part (with respect to liability) on January 25, 2006.[2]

On April 25, 2007, Mr. Kreppein sought to amend his pleadings. In his proposed counterclaims, Mr. Kreppein alleged that he was entitled to the insurance proceeds from Mrs. Kreppein's life insurance policy because Mrs. Kreppein was enjoined by the state court's temporary restraining order from changing the beneficiary designation. In addition, for the first time, Mr. Kreppein claimed that Mrs. Kreppein's attempt to amend the beneficiary designation was null and void because she lacked mental capacity at the time and because she had entered into a mutually reciprocal agreement with him not

---

[2] The district court refused to award attorneys' fees and costs, although it later did so after additional briefing. A judgment dismissing First Colony was not entered until the final judgment was issued on March 20, 2008.

to alter the beneficiary designations in their respective life insurance policies. Lastly, Mr. Kreppein sought to assert cross claims against Crane and Luquette and third-party claims against Mrs. Kreppein's mother and attorney.

On May 11, 2007, Crane and Luquette and Mr. Kreppein filed cross-motions for summary judgment. In their motion for summary judgment, Crane and Luquette also moved to strike Mr. Kreppein's amended cross claims and third-party claims. On June 25, 2007, the district court granted their motion to strike in part and granted Mr. Kreppein's motion to amend in part. Specifically, the district court struck Mr. Kreppein's proposed cross claims and third-party claims, but permitted the amendment of Mr. Kreppein's counterclaims. The district held that the case was limited to the: (1) question of Mrs. Kreppein's mental capacity on the day she executed the Policy Change Form; and (2) effect on Mrs. Kreppein's change of the beneficiary designation of both the state court's temporary restraining order and the Kreppeins' alleged, mutually reciprocal contract.

On August 24, 2007, the district court entered summary judgment for Crane and Luquette. The district found that Mrs. Kreppein was mentally competent at the time she changed the beneficiary designation, the state court's temporary restraining order was not in effect at that time, and the Kreppeins did not have a mutually reciprocal agreement with respect to their life insurance policies. On March 20, 2008, the district court denied a motion for reconsideration filed by Mr. Kreppein and entered final judgment against him.

Mr. Kreppein then filed a timely notice of appeal.[3] He raises three issues, namely, whether: (1) the state court's temporary restraining order rendered

---

[3] Mr. Kreppein's notice of appeal includes the judgment in favor of First Colony. First Colony filed a brief with this court arguing that Mr. Kreppein waived any of his potential arguments against it by failing to raise them in his initial brief. Mr. Kreppein did not respond in his reply brief. We therefore agree with First Colony. See Green v. State Bar of Tex., 27 F.3d 1083, 1089 (5th Cir. 1994) (citation omitted).

Mrs. Kreppein's change of beneficiaries null and void; (2) Mrs. Kreppein lacked the capacity to change the beneficiary designation because she had a mutually reciprocal contract with Mr. Kreppein; and (3) the state court's temporary restraining order was res judicata.

## II.  DISCUSSION

### A.  Standard of Review

We review a grant of summary judgment de novo, viewing all the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.  See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000) (citations omitted).  Summary judgment is proper when the evidence reflects no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  Crawford, 234 F.3d at 902 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "Even if we do not agree with the reasons given by the district court to support summary judgment, we may affirm the district court's ruling on any grounds supported by the record."  Berquist v. Wash. Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007) (citation and internal quotation marks omitted).

### B.  The Temporary Restraining Order

Mr. Kreppein argues that Mrs. Kreppein's attempt to change the beneficiary designation of her life insurance policy violated the express terms of the state court's temporary restraining order.  He asserts that the temporary restraining order was legally valid when executed and that it remained in full force and effect throughout the divorce proceedings—under article 3604(B) of the Louisiana Code of Civil Procedure—because the Kreppeins agreed to a continuance of the August 16 show-cause hearing.  Mr. Kreppein claims that the continuance was requested by Mrs. Kreppein's attorney and that the state court

agreed to remove the scheduled hearing from its calendar, although it would not set a new date until pleadings were filed. Finally, because Mrs. Kreppein failed to contest the temporary restraining order's validity and Louisiana law does not favor self help, Mr. Kreppein contends that the temporary restraining order "prevented [Mrs.] Kreppein from having the requisite legal capacity to effect a change of beneficiary, so her signature on the change form was a legal nullity."

We agree with the district court that the temporary restraining order expired before Mrs. Kreppein executed the Policy Change Form on August 22, 2005. Under Louisiana law, a temporary restraining order expires on its own terms within such time as the court prescribes. LA. CODE CIV. PROC. ANN. art. 3604(A). Ordinarily, the state court may not fix a time that exceeds ten days.[4] See id. However, "a temporary restraining order issued in conjunction with a rule to show cause for a preliminary injunction prohibiting a spouse from . . . [d]isposing of or encumbering community property . . . shall remain in force until a hearing is held on the rule for the preliminary injunction." LA. CODE CIV. PROC. ANN. art. 3604(B).

In such instances, "the application for a preliminary injunction shall be assigned for hearing at the earliest possible time . . . ." LA. CODE CIV. PROC. ANN. art. 3606. And "[t]he party who obtains a temporary restraining order shall proceed with the application for a preliminary injunction when it comes on for hearing." Id. (emphasis added). "If the party who obtains a TRO does not proceed with the application for a preliminary injunction when it comes on for hearing, then the court is required to dissolve the TRO." Lewis v. Adams, 679

---

[4] Crane and Luquette argue that article 3604(A)'s ten-day limit applied to the state court's temporary restraining order in this case because life insurance proceeds are not community property. We note that this conclusion is seemingly at odds with the schedule the state court set because the temporary restraining order would have expired before the August 16 hearing. However, we need not resolve the issue because we conclude that the temporary restraining order would have expired before August 22 under either article 3604(A) or 3604(B).

7

So. 2d 493, 496 (La. Ct. App. 1996) (citation omitted); see also Powell v. Cox, 83 So. 2d 908, 910 (La. 1955) ("[A] temporary restraining order . . . ceases to exist and its legal effectiveness is of no moment as of the date of the hearing of the rule nisi for either the granting or refusing of a preliminary injunction."); Austin v. Currie, 134 So. 723, 724–25 (La. Ct. App. 1931) (holding that a temporary restraining order expired on the day it was set for hearing because nothing in the record indicated that it was continued even though the parties proceeded to trial on the theory that there was an injunction in force).

In this case, the August 16 hearing to show cause why a preliminary injunction should be issued passed without any attempt by Mr. Kreppein to prosecute his application. Nor did the state court continue the August 16 hearing.[5] Mrs. Kreppein's attorney stated in her affidavit that on August 15, 2005, Meghan Hinyub, her legal assistant, "called the [c]ourt to reschedule the August 16[] hearing and was unable to obtain a new date for the hearing since the Motion to Continue had not yet been filed." Hinyub submitted an affidavit stating that she called the state court and that, although she "was unable to obtain a new date for the hearing since the Motion to Continue had not yet been filed[,]" she "was informed that, once the Motions had been filed, then a new date would be set." According to Hinyub's contemporaneous notes, it was the "clerk"

---

[5] We also note that the summary judgment evidence does not support Mr. Kreppein's assertion that Mrs. Kreppein sought a continuance. Mr. Kreppein's attorney did not swear in her affidavit that Mrs. Kreppein requested the continuance. Rather, she testified that during an August 13, 2005, telephone conversation with Mrs. Kreppein's attorney she said she "would not object to a continuance of the Rules previously set for hearing on August 16, 2005." On the other hand, there is evidence that Mr. Kreppein's attorney sought the continuance because his attorney mistakenly believed that Mrs. Kreppein had not been served. On August 15, 2005, a legal assistant for Mr. Kreppein's attorney noted in the firm's "online organization system" that "I spoke with the Sheriff's office to see if M[r]s. Kreppein has been served. She has not been served and there was no problem. I spoke with Mr. Kreppein and told him that there would be no court tomorrow because she had not been served." An earlier notation that same day stated that if Mrs. Kreppein had not been served a motion for continuance should be filed.

of court with whom she spoke, not the state court. Regardless, Mr. Kreppein never filed a motion for continuance seeking a new hearing date. And the state court never entered an order before (or even after) the August 16 hearing continuing the hearing to a later date. Accordingly, the temporary restraining order was not in effect when Mrs. Kreppein later changed her beneficiary designation.[6]

## C. The Mutually Reciprocal Contract

Mr. Kreppein argues that Mrs. Kreppein "contracted away her right to change the insurance beneficiary when she entered into a bilateral contract for reciprocal insurance policies with [him]." In support of the alleged existence of such a contract, Mr. Kreppein relies on his own affidavit testimony that: "[Mrs. Kreppein] and I specifically agreed that the proceeds of the respective policies would reciprocally ensure each the other, in the event of death, . . . and that there would be no change regarding the insurance policies or beneficiaries." He also attempts to rely upon Sullivan's affidavit; the most relevant statement therein consisting of the comment that Mr. Kreppein "indicated that he and [Mrs. Kreppein] wanted to discuss obtaining life insurance policies that would protect each of them in the event of the death of the other." Mr. Kreppein neither submitted a copy of the alleged agreement nor alleged that the contract was in writing. Based solely on the affidavits described above and without citation to any legal authority, Mr. Kreppein argues that the alleged contract prevented Mrs. Kreppein from validly changing her beneficiary designation because one cannot "validly twice sell a car or a property after it has been sold once."

---

[6] Our decision that the temporary restraining order expired necessarily means that it was not entitled to res judicata effect. See LA. REV. STAT. ANN. § 13:4232(B) (providing that judgments resulting from an action for divorce only have res judicata effect as to causes actually adjudicated); Assocs. Fin. Servs. of Am., Inc. v. Rogell, 449 So. 2d 526, 528 (La. Ct. App. 1984).

We need not consider whether the district court properly found that Mr. Kreppein failed to raise a genuine fact issue concerning the existence of a mutually reciprocal agreement because we agree with Crane and Luquette that Mr. Kreppein has not demonstrated that such a contract would alter the outcome of this case. Under Louisiana law, life insurance proceeds are considered "sui generis and therefore not subject to many traditional civilian principles." Fowler v. Fowler, 861 So. 2d 181, 183 (La. 2003) (explaining that the Louisiana Code of 1808 provided that insurance was foreign to the code because insurance contracts derived from common law countries and were considered a form of gambling under the French Civil Code (citation omitted)). "[T]he principle that life insurance proceeds are sui generis has led Louisiana courts for decades to look to the provisions of the policies themselves and any pertinent portions of the Insurance Code to resolve disputes concerning such policies." Id. at 185. The rules of contract also provide a basis for the protection of life insurance proceeds because the insurance contracts are generally interpreted as ordinary contracts. See id. But if nothing in the laws of insurance or contract control, the policy terms prevail. See Jackson Nat'l Life Ins. Co. v. Kennedy-Fagan, 873 So. 2d 44, 50 (La. Ct. App. 2004).

Here, Mrs. Kreppein's insurance policy specifically provided that the "Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's lifetime. Any change is subject to the consent of an irrevocable beneficiary." This is consistent with the notion under Louisiana law that, "absent a conventional agreement, no one has the vested right to the status of a beneficiary under a life insurance contract, if the contingent event which vests such right, the death of the insured, has not occurred. Until then, the parties to the insurance contract are free to change the beneficiary, if such a change is permitted by its terms." Id. at 49. Although Mrs. Kreppein's life insurance policy clearly vested Mrs. Kreppein with the right to

name an irrevocable beneficiary, nothing in the policy itself or the record in this case suggests that she did so. Nor is there evidence that she assigned ownership of the policy to Mr. Kreppein, which would have had the same effect. See Kambur v. Kambur, 352 So. 2d 99, 103 n.4 (La. Ct. App. 1995) (citation omitted). Indeed, Mr. Kreppein seeks to diminish these facts by arguing that nothing in the record indicates that either he or Mrs. Kreppein was aware of such options.

Mr. Kreppein would have us overlook the plain meaning of the insurance policy based on the alleged existence of another contract Mrs. Kreppein entered into with a third party. He provides no legal authority for this argument. See Jackson Nat'l Life Ins. Co., 873 So. 2d at 50 ("Louisiana [law] simply does not address this situation; it is therefore governed by the policy terms, which constitute the law between the parties."). And he does not respond to Crane and Luquette's contention that his allegations amount to no more than a potential breach of contract claim against Mrs. Kreppein's estate. See id. (holding that while a wife's succession may have claims against a husband's succession arising from a life insurance policy, the policy proceeds must be disbursed in accord with the policy language). Because Crane and Luquette were the named beneficiaries and nothing in Mrs. Kreppein's insurance policy indicates that she lacked legal capacity to change the beneficiary designation, the district court correctly awarded the proceeds to Crane and Luquette. See Fowler, 861 So. 2d at 186 ("[T]he beneficiary is a named individual. Thus, the right to ownership of the proceeds should devolve in accordance with the contract provisions which are clear and unambiguous.").

## III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment.