WHIPPLE, C.J.
This matter is before us on appeal by plaintiffs/appellants, Afrah Qasem and Asary Shotah, from a judgment of the trial court granting summary judgment in favor of defendant/appellee, Acadian Apartments, Inc. For the reasons that follow, the judgment of the trial court is affirmed.
FACTS AND PROCEDURAL HISTORY
In the early morning hours of October 29, 2010, plaintiffs, Afrah Qasem and her daughter, Shotah, attempted to escape a fire in their apartment by jumping from a second floor apartment window. Plaintiffs subsequently filed suit against Acadian Apartments, Inc. (hereinafter "Acadian") seeking damages for injuries they sustained.[1] Plaintiffs alleged that their damages were caused by Acadian's negligence in failing to maintain adequate policy and procedure, properly working smoke/fire alarms, and properly working fire extinguishers, and in failing to provide adequate and properly noted emergency exits.
Acadian responded by filing a reconventional demand against plaintiffs, requesting a trial by jury and seeking damages in excess of $50,000.00 for the "extensive damage" to their apartment and to adjoining apartments purportedly caused by plaintiffs. Therein, Acadian alleged that plaintiffs were negligent in failing to be attentive and maintain safe conditions in the apartment, in causing the fire by their *3 careless use of a candle or other inflammatory device, and in starting a fire and failing to extinguish it.
On February 3, 2017, Acadian filed a motion for summary judgment seeking dismissal of plaintiffs' claims, contending that plaintiffs did not allege, nor can they prove, that Acadian caused the fire, and that plaintiffs have set forth no evidence to establish their entitlement to recovery of damages under any other theory.[2] Acadian's motion for summary judgment was set for hearing on June 9, 2017. Following the hearing on June 26, 2017, the trial court signed a judgment granting Acadian's motion for summary judgment and dismissing plaintiffs' claims against it with prejudice.
Plaintiffs now appeal, contending that the trial court erred in granting summary judgment where it disregarded plaintiffs' deposition testimony and supporting affidavits and made credibility evaluations.
DISCUSSION
At the outset, we note that our review of the judgment indicates that the summary judgment granted in favor of the defendants dismisses all of plaintiffs' personal injury claims against Acadian with prejudice. Although the trial court retained jurisdiction over the Acadian's reconventional demand (i.e., Acadian's property damage claims against plaintiffs), which remain unresolved,[3] because the judgment before us on appeal resolves all of the issues in the principal demand, we conclude that it is a final judgment subject to immediate appeal pursuant to LSA-C.C.P. art. 1915(A)(3).[4] See Jackson National Life Insurance Company v. Kennedy-Fagan, 2003-0054 (La. App. 1st Cir. 2/6/04), 873 So.2d 44, 47-48, writ denied, 2004-0600 (La. 4/23/04), 870 So.2d 307, citing Motorola, Inc. v. Associated Indemnity Corporation, 2002-0716 (La. App. 1st Cir. 4/30/03), 867 So.2d 715, 718-719 (The granting of a summary judgment resolving all issues in the principal demand was a final judgment pursuant to LSA-C.C.P. art. 1915(A)(3)that did not require a certification pursuant to LSA-C.C.P. art. 1915(B) when other issues in the reconventional demand remained unresolved.); Johnson v. Laney, 2007-0237 (La. App. 4th Cir. 7/25/07), 964 So.2d 418, 420, n.4 (The granting of summary judgment resolving all of the issues presented in the principal demand, the judgment was a final appealable judgment pursuant to LSA-C.C.P. art. 1915(A)(3) without the need for certification even though the district court retained jurisdiction over the claims asserted in the reconventional demand.) Accordingly, we find this appeal is properly before us, and the trial court was not required to certify the judgment as a final judgment pursuant to LSA-C.C.P. art. 1915(B).[5]
*4 Summary Judgment
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Jones v. Anderson, 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So.3d 413, 417. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. LSA-C.C.P. art. 966(A)(4).
The burden of proof rests on the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1).
Appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Crosstex Energy Services, LP v. Texas Brine Company, LLC, 2017-0895 (La. App. 1st Cir. 12/21/17), 240 So.3d 932, ----. Thus, appellate courts ask the same questions: whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Crosstex Energy Services, LP v. Texas Brine Company, LLC, 240 So.3d at ----. Because it is the applicable substantive law that determines materiality, whether a particular issue in dispute is material can be seen only in light of the substantive law applicable to the case. Jones v. Anderson, 224 So.3d at 417.
To determine whether liability exists under the facts of a particular case, we apply a duty-risk analysis, as adopted by Louisiana courts. Brewer v. J.B. Hunt Transport, Inc., 2009-1408, 2009-1428 (La. 3/16/10), 35 So.3d 230, 240. In order for liability to attach under a duty-risk analysis, a plaintiff must prove: (1) duty; (2) breach; (3) causation; and (4) damages.[6] Roberts v. Rudzis, 2013-0538 (La. App. 1st Cir. 5/28/14), 146 So.3d 602, 608-609, writ denied, 2014-1369 (La. 10/3/14), 149 So.3d 797. The existence of a legal duty and a breach of that duty are prerequisites to *5 any determination of fault. Seals v. Morris, 410 So.2d 715, 718 (La. 1981) (on rehearing). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. Mathieu v. Imperial Toy Corporation, 94-0952 (La. 11/30/94), 646 So.2d 318, 326.
Plaintiffs contend that the trial court erred in granting summary judgment herein, where Acadian provided no evidence to prove that the smoke/fire alarms were regularly maintained and where the trial court improperly weighed the evidence and determined the credibility of witnesses.
Acadian contends that summary judgment was properly granted where plaintiffs do not allege, and the evidence fails to establish, that Acadian negligently caused the fire. Acadian further contends that although plaintiffs allege that their damages were caused by Acadian's failure to maintain adequate policies and procedure and properly working smoke/fire alarms and fire extinguishers, plaintiffs offered no evidence whatsoever to support these allegations. In support of its motion for summary judgment, Acadian set forth deposition excerpts of the plaintiffs, Michael Millet of the Houma Fire Department, Majdi Obadi, Mai Ngyuen, and Trung Ngyuen. Acadian also submitted affidavits of Richard W. Jones and James Mazerat, and a supplemental affidavit of Richard W. Jones, photographs of the smoke alarm depicting the absence of a battery in the alarm and the presence of a battery in a drawer, and an apartment inspection checklist dated June 22, 2010.
Qasem testified that she and Shotah arrived home around midnight on the night of the fire and were exhausted after having travelled several hours that day. They had been previously advised by a friend, Majdi Obadi, that the electricity to their apartment had been disconnected, so a relative, Hassan Obadi, escorted them to their apartment with a candle that he left in their kitchen after seeing them in. Qasem stated that Hassan did not have a holder for the candle and that they did not concentrate on moving the candle because they were "very, very tired [and] exhausted." Qasem stated that after arriving at the apartment, she took a second candle and lit it from the candle in the kitchen and brought it into the bathroom so she could wash up and that Shotah went straight to bed. Qasem stated that she left the candle in the bathroom in case Shotah woke up and needed to see her way to the bathroom. Qasem stated that she extinguished the first candle after lighting the second candle. Shotah testified that she went directly to her room and fell asleep and had no memory of her mother bringing a candle in the bathroom.
Majdi testified that the lease for plaintiffs' apartment, as well as all of the utilities for the apartment, including the electrical bills, were in his name. He acknowledged that at the time of the fire, the electricity had been disconnected at the apartment because he had failed to pay the electrical bill owed to Entergy.
Mai Ngyuen and her husband, Trung Ngyuen, owned the apartment building. Mai testified that during the last two weeks of each month, starting around the fifteenth, she inspected each apartment to check the AC filter and smoke/fire alarm to see if it worked or if the battery needed replacing. Mai testified that although she did not keep a written log of her monthly inspections, she specifically recalled checking plaintiffs' apartment two months before the fire and seeing that the battery had been taken out of the smoke/fire alarm and was placed on the refrigerator. Mai stated that she put the battery back in the alarm and told them not to take it out again. When she performed the inspection *6 two weeks before the fire, the battery was in the smoke/fire alarm.
Mai testified that when a new tenant moves in, they routinely check the smoke/fire alarm to see if it is working or if the battery needs to be replaced. Acadian further presented an apartment checklist from an inspection performed by Mai in June of 2010, before plaintiffs moved in, wherein Mai specifically noted, "Smoke alarm with battery work ok." Mai further stated that they routinely inspect the fire extinguishers in each apartment and that two months before the fire herein, she took the fire extinguishers to the fire station to be refilled.
Trung Ngyuen stated that after the fire, he accompanied the insurance adjuster on an inspection of the apartment. In doing so, he found a candle stand and lighter on top of the refrigerator. During the inspection, they noticed that the smoke/fire alarm was still on the wall, but that it had melted and thus, they were not able to open it. A few days later, Trung returned and again tried to open the smoke/fire alarm. He ultimately broke the alarm open and saw that it did not have a battery in it. Trung then looked around the kitchen and found the battery in the corner of a kitchen drawer. He took photographs of the smoke/fire alarm without a battery and the photograph of the battery in the drawer and submitted them to the insurance adjuster.
Acadian presented the deposition testimony of Michael Millet, a fire inspector with the Houma Fire Department. Millet testified that he was called out to the scene to investigate the fire and that it appeared that the fire started on or around the sofa. Although he could not state for certain that a candle caused the fire, he stated that he was "99 percent sure" that it was not an electrical fire.
Acadian also submitted the affidavit and report of James L. Mazerat, CFI, a certified professional forensic fire investigator, who was retained by Montpelier U.S. Insurance Company to investigate the origin and cause of the fire. After personally inspecting the fire scene, Mazerat attested that Acadian complied with all applicable building codes for fire alarms, fire extinguishers, and exits as well as with all safety requirements.
Acadian also presented the affidavit and report of Richard W. Jones, Jr., CFI, CFEI, CVFI, who was also retained by Montpelier U.S. Insurance Company to investigate the origin and cause of the fire. After completing his investigation, Jones opined that the fire originated within the sofa and determined that the cause of the fire was open flame contact to combustible material most likely resulting from an unattended candle utilized for light making contact with the sofa.
In opposition to the motion for summary judgment, plaintiffs offered their affidavits and deposition excerpts, along with deposition excerpts of Mai Ngyuen and Trung Ngyuen. In similar affidavits, plaintiffs attested that a candle was used on the night of the fire only in the bathroom and bedroom and was not used near the sofa, which is purportedly the area of origin of the fire; that at no time did they hear an audible alarm or warning from any fire/smoke detection system; and that at no time did they ever remove, tamper with, or damage the fire/smoke detection system or batteries that accompanied such system inside the apartment.
To the extent that plaintiffs argue herein that the granting of summary judgment was improper because the Ngyuens provided "no evidence" to prove that the smoke/fire alarms were regularly maintained, we disagree. Although they admittedly did not keep a written log of monthly *7 inspections, both Mai and Trung Ngyuen stated in their deposition testimony that the smoke/fire alarms were regularly checked. Louisiana Code of Civil Procedure article 966(A)(4) specifically authorizes consideration of depositions in support of, or in opposition to, motions for summary judgment.[7] See Gatlin v. Kleinheitz, 2009-0828 (La. App. 1st Cir. 12/23/09), 34 So.3d 872, 876, writ denied, 2010-0084 (La. 2/26/10), 28 So.3d 280 ; Service One Cable T.V., Inc. v. Scottsdale Insurance Company, 2011-1470, p. 3 (La. App. 1st Cir. 2/10/12) (unpublished). Accordingly, we find the deposition testimony of Mai and Trung Ngyuen to be competent evidence on summary judgment.
Moreover, Mai testified that before a tenant moves in, she and Trung conduct an inspection of the apartment, wherein the smoke/fire alarm is specifically checked to ensure that it is working properly. Moreover, the written checklist from an inspection of plaintiffs' apartment performed by Mai in June of 2010, noting that "Smoke alarm with battery work ok," was offered by Acadian in support of its motion for summary judgment. Thus, in light of their deposition testimony and the inspection checklist, the record before us does not support plaintiffs' contention that the Ngyuens provided "no evidence" to prove that the smoke/fire alarms were regularly maintained.
Plaintiffs next argue that the trial court erred in rendering summary judgment by weighing "conflicting" evidence, where the Ngyuens testified that there was no battery in the smoke/fire alarm while plaintiffs testified that the smoke/fire alarm made no sound on the night of the fire and that they did not remove the battery. Plaintiffs contend that in doing so, the trial court "made an evaluation of credibility," which they contend is evidenced in the court's finding, as follows:
[Liability] could only be imposed because of any breach of duty by Acadian Apartments to maintain a smoke alarm. All of the evidence that I have indicates that they did make an effort to maintain a smoke alarm. I might add I think, and the uncontradicted evidence is that they did it, I think they were doing a pretty good job trying to keep that smoke alarm operating. For some reason the battery was out, nobody can tell me why. Nobody has offered any evidence as to why. And it is the plaintiffs['] burden to show that it was the defendant who breached the duty. The evidence I have is to the contrary, that they were doing everything they could not to breach the duty, but that somehow the battery was removed from the smoke alarm. And I have no evidence to suggest that it was removed by the defendant.
After a thorough de novo review of the record herein, we disagree with plaintiffs' contention that the trial court's ruling was improperly based on the resolution of conflicts in the testimony and that, in its finding set forth above, the trial court made credibility determinations. Rather, on de novo review, we find that the Ngyuens' testimony that the smoke/fire alarm did not contain a battery is perfectly consistent with the plaintiffs' testimony that they did not hear an alarm sound. Moreover, we find no merit to plaintiffs'
*8 argument that summary judgment was improper in that the Ngyuens' deposition testimony "suggested" that plaintiffs must have removed the battery from the smoke/fire alarm.
Simply stated, once Acadian set forth evidence to establish that the smoke/fire alarms were regularly inspected once a month, that the smoke/fire alarm had a working battery in it a couple of weeks before the fire, and that the smoke/fire alarm did not contain a battery at the time of the fire, the burden shifted to plaintiffs to produce factual support sufficient to establish that Acadian removed the battery or otherwise breached a duty owed to plaintiffs (i.e., that defendant's conduct was a cause-in-fact of plaintiffs' injuries). See LSA-C.C.P. art. 966(D)(1) ; Robert v. Rudzis, 146 So.3d at 608-609. In sum, although plaintiffs attested that they did not remove the battery from the smoke/fire alarm, they failed to produce any evidence to establish that someone acting on behalf of Acadian did remove the battery. Without this evidence, plaintiffs have failed to show that they will be able to carry their evidentiary burden of proof at trial.
Accordingly, we find no error in the trial court's grant of summary judgment dismissing plaintiffs' claims.
CONCLUSION
For the above and foregoing reasons, the June 26, 2017 judgment of the trial court, granting Acadian Apartment, Inc.'s motion for summary judgment and dismissing plaintiffs' claims with prejudice, is hereby affirmed. Costs of this appeal are assessed to the plaintiffs/appellants, Afrah Qasem and Asary Shotah.
AFFIRMED.

Plaintiffs later amended their petition in response to a dilatory exception of vagueness filed by Acadian.

The motion indicates a "fax filing" date of January 31, 2017.

Following its grant of Acadian's motion for summary judgment and dismissal of plaintiffs' claims, the trial court specifically acknowledged that defendant's reconventional demand remained pending.

A trial court may render a partial final judgment that is immediately appealable, even though it may not grant the successful party or parties all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court grants a motion for summary judgment, as provided by Articles 966 through 969, but not including a summary judgment granted pursuant to Article 966(E). LSA-C.C.P. art. 1915(A)(3).

Cf. LWCC v. Sims, 2014-1378 (La. App. 1st Cir. 4/24/15), 2015 WL 1882608 (unpublished) (where the trial court's grant of summary judgment as to the principal demand granting LWCC an award for unpaid premiums and late fees implicitly denied the defendants' claims in their reconventional demand that LWCC "overcharged" them for premiums, yet the judgment was silent as to the reconventional demand, a certification that the judgment was final under LSA-C.C.P. art. 1915(B) was required where the principal demand and the reconventional demand both concerned the "issue" of premium payments, and the judgment seemingly disposed of that issue, yet failed to dismiss or otherwise dispose of the reconventional demand).

More specifically stated, a plaintiff must establish that: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Roberts v. Rudzis, 2013-0538 (La. App. 1st Cir. 5/28/14), 146 So.3d 602, 608-609, writ denied, 2014-1369 (La. 10/3/14), 149 So.3d 797.

Louisiana Code of Civil Procedure article 966(A)(4) provides that:
The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. The court may permit documents to be filed in any electronically stored format authorized by court rules or approved by the clerk of the court.